18-23-50 United States of America v. Roberto Clemente Govea Oral argument not to exceed 15 minutes per side Mr. Brown for the defendant's appeal Please the court, I'd like to reserve 3 minutes of my time for rebuttal You may proceed Good morning, your honors I am Mark Brown, I represent the defendant appellate in this case Mr. Roberto Govea, who is here today before the court on his appeal of the denial of his motion to suppress before the United States District Court for the Western District of Michigan Mr. Govea entered a conditional guilty plea and was permitted to bring this matter to the Sixth Circuit Court of Appeals as part of that plea, he is currently serving time in incarceration The United States Supreme Court, as I'm sure the court is aware, has said numerous times that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed and that's really what this matter is about is whether officers from the Kent Area Narcotics Enforcement Team that sometimes will be referred to as KNET reasonably invaded Mr. Govea's right of privacy in his own home in order to conduct a search based on what we believe is a very, very thin standard of probable cause and in fact the district court in this case at a couple of places in its ruling said well the affidavit here with respect to Mr. Govea's home is sort of thin and at one point determined that it was a close call with respect to probable cause Now, did the court really rule one way or the other whether there was probable cause? You know, and that's an issue I was just taking a look at this morning and no, they didn't definitively really ever order that it was more of a one way, it was probable cause that probable cause supported the warrant Sort of kicked it to that Leon Goodfaith exception that's kind of really what this case comes down to as to whether it meets the Leon Goodfaith exception or not but probable cause is a part of that analysis as well but I don't think they specifically said the warrant has probable cause but they also didn't specifically say, the judge up there didn't specifically say there was no probable cause either One of the things that helps your case is that we have different lines, threads of authority when it comes to whether one can expect to find drugs at the home of a drug dealer or someone thought to be dealing drugs So on the one hand, those different lines of authority help you potentially in the probable cause inquiry it seemed quite hurtful on the Leon Goodfaith theory because it seems to me an officer would respond by saying if the judges on the Sixth Circuit can't figure this out why should I have to figure this out? Yes, and I see your point, Your Honor and the Leon Goodfaith exception comes into a situation it's sort of a colloquialism if so it's sort of like the minnow swallows the whale or something the exception becomes greater than the rule but there still must be a minimally sufficient nexus in order to get past that Leon Goodfaith exception and in here, what we have is we have an officer who has determined several things in his affidavit Number one, that there is this gentleman out there named Ashton Belcher, which candidly my client does know we can't get around that, he does know Mr. Belcher and he was with Mr. Belcher in Mr. Belcher's backyard and then the officer observed Mr. Belcher and my client leave the backyard, get into a 2017 Nissan drive to my client's house, Mr. Goveia's house where he went in very shortly and came back outside and then proceeded to a transaction where Mr. Belcher conducted a drug deal and a transaction which had sort of been arranged beforehand Yeah, absolutely But there's phone calls so that the timing is such that a man of reasonable caution would say they knew they were going to a drug deal A man of reasonable caution may say that but also, with respect to the phone calls, your honor there are no phone calls specifically with my client and the confidential informant But he is with Belcher He is with Belcher Belcher has set up the drug deal Yes So, in honesty, don't you have the question of is going into the house and coming out of the house having something to do with the drug deal, drugs or guns or did they just stop to pick up a pack of cigarettes or get the morning paper? Isn't that kind of fair of what that entry was or what a man of reasonable caution might think it might have been? I think that is the key issue I think you've identified the key issue, your honor and that is the fact that what was the purpose of the brief stop that he made and when you look at this in context of and it is a reasonable inference Yes, can you reasonably infer he went in there and got some drugs or a gun or something? I agree it's the key point but what's troubling is the officer could have had a bunch of Sixth Circuit cases right next to him saying drug dealers often use homes to store drugs and thought, ah, I think we should go in I think that works But the officer in this case, I think the stop is so brief and also, as I was going to mention putting this in context of the overall thing here we have phone calls, as your honor mentioned between Mr. Belcher and the confidential informant there are no phone calls between my client and the confidential informant likewise, the officer never observed anything at Mr. Gouveia's house that would indicate any type of drug dealing essentially, he's going on a hunch that this is a stash house because he's familiar with those the way drug dealers do business we all know the standard recitations that go into all these warrants Could you address the timing issue of the phone call from the confidential informant to Mr. Belcher does that make any difference? I don't think the affidavit sets forth the timing of when the call was made in relation to when the two gentlemen left Dolby Street to go to Mason Street Do we just infer, in your view that that call was made within some reasonable period of time  I honestly don't know, your honor Does it make a difference? I don't know that it does one way or the other I would think that whenever the call was made clearly it was Mr. Belcher's intent to go conduct this transaction and again, I'm not going to hide from the facts in this case because we can't hide from the facts the confidential informant reported that Mr. Gouveia my client, had been with Mr. Belcher on numerous transactions I can't hide from that fact the key comes down to me anyway and obviously you all are the decision makers here the key to me comes down to was there enough in that officer's mind to conclude that that one brief stop at the Mason Street address where Mr. Gouveia was living was enough to assume that he went inside, grabbed some drugs and that was part of the drug transaction Does it make a difference that the affidavit says, I think that Mr. Gouveia had been in proximity, I think to Mr. Belcher for dozens and dozens of times in the past year when Mr. Belcher was was selling drugs and from time to time Gouveia had a gun in his waistband so it's is it your view we don't look at what happened in those various drug deals that happened before this one stop I'm not talking about the three control buys I'm talking about the various ones over the past year It makes a difference with respect to can you determine that my client Mr. Gouveia is involved in drug trafficking Yes, I think you can determine that from those particular from all those incidences What the key is, is Mr. Gouveia's residents have a minimally sufficient nexus to the drug trafficking Exactly, and I'm just wondering if and if you put this all in context that perhaps this Mason Street property is a quote unquote stash house whether we even it's even one of the circumstances when we look at the totality that should be considered Well, and you look at the Mason Street address and it averts a stash house but you can't and we do know that based on the facts but those came later when they conducted the search they found all the heroin, cocaine, firearms, whatever in there but we can't take a look back not hindsight at that point it's looking at what does the officer know at that point Do you have a case where someone rejected the Leon Good Faith and rejected it in this kind of a setting where the mistake was assuming too quickly that a drug dealer keeps drugs in the house I don't know that it's I only want it if it has that last point I don't think that I found anything to that aspect the only thing I really could find with respect to it, I cited in the brief was the Eastern District of Michigan case that I cited in the brief where the court determined that there wasn't a I don't know if the term, right term mentally sufficient nexus or whatever but I think that I don't know that I've had anybody or found in my research anything where they totally rejected the Leon The Eastern District of Michigan case is that Brown? No, Brown is actually this court's case I believe, your honor Eastern District of Michigan Yeah, okay and I had if I could just look at my notes here real quickly, your honor the case I think I identified was Miles I believe, out of the Eastern District of Michigan I'm having a little trouble finding it at this point and of course it goes through, yeah it's Miles where it said that the court there, the Eastern District of Michigan said here the warrant is completely devoid of any facts suggesting that the defendant deals drugs, keeps contraband or other indicia of drug trafficking in his current residence and that's kind of the issue here Was that the one where he had moved houses, though? There's a whole bunch of these cases in the past Yeah, I don't know that that necessarily was the one where he moved houses your honor, I don't have that fact in front of me I think the facts in that case said that he had slept in the apartment twice which, you know, we don't know in the record how often, Mr. Gavea They hadn't surveilled him any other time Here they surveilled him, they surveilled him going into the house in the midst of a drug deal In the midst of a drug deal but do we know, based on this record, if he came out with drugs, because there was never any indication No, that's clear, but the connection to Miles, at least as I read it they say, you know, he sold heroin earlier at other locations previous, etc, etc that they're really you know, saying they had to they had to make some attempt to connect the drug trafficking with the apartment Well, here they made a pretty decent attempt. The guy is stopping there, you know, in the midst of the drug deal to go in You're right, I mean, he could have been going to the bathroom, he could have been, you know, getting his copy of the Iliad I see my time is up, so You may finish yours Yeah, no And again, again without having it in context, and I understand these cases turn a lot on context, but without having it in context that there had been other drug trafficking observed at this particular residence we can't reasonably infer that he came out with drugs, even though, yes, it was in the midst of a drug deal, we do know that but perhaps Mr. Belcher had those beforehand. Thank you. Okay, thank you. You'll have your rebuttal time Good morning Good morning May it please the court, Tanya Long for the United States This court should affirm the denial of Mr. Gouveia's motion to suppress, both because the magistrate had a substantial basis for finding probable cause on this record, and because the officers relied on the warrant in good faith So to start with probable cause, I think if there is a rule that you can draw from this court's cases, it's that when you're dealing with an ongoing, continual drug trafficker, if there's some reliable evidence connecting to the residence, then that is sufficient for probable cause. I'm drawing that from United States v. McCoy and also from evidence that connects it to the house, what do you mean by that? You said some reliable evidence Some reliable evidence. I believe that's the wording that they use in that case So what do you mean by it? Several different types of things would suffice. In this case, we have the stop directly before the drug deal. When the drug deal was about to happen, they stop at Mr. Gouveia's residence directly before meeting with the CI which is consistent with stopping at a stash house. We also have cases like Ellison, where the person leaves the That's insufficient. You can't just assume because you're dealing drugs that the drugs are in the house You can't just assume, no but the cases do say that that is an inference that the judge can draw. Now it's not enough to get to probable cause unless there's something extra Now in United States v. Frazier, this court said it was not enough, but they did find good faith because all of the information that the that was in the warrant was uncorroborated information from informants and so in that case, it was not reliable information. Now there's been other cases in which there's been absolutely no nexus whatsoever, no attempt to connect the residence. And even in some of those cases, this court has found probable cause and has also found good faith. I think the best case for United States here is United States v. Gunter. It is an unpublished case, but it is a case where the like here, there was no statement connecting the sorry, there was no person who said that they observed drugs in the residence or that they had done a drug deal there. But there were many drug deals that happened outside of the residence and the officers actually observed the drug dealer stopped by his residence directly before going to a drug deal. And this court found that that met the standard set forth in Jones and in this court's other cases about there being a sufficient connection there to make that inference that drug dealers tend to keep their evidence at home. Do you have an objection to going straight to Leon? Do I have an objection? No, Your Honor. I think that in this case, there was sufficient probable cause, but we will take any basis that we can win on. So definitely there was good faith in this case as well. Fourth Amendment has its reasonableness, its facts and circumstances, and facts and circumstances tests don't tend to generate rules. And I think it's quite difficult to figure out exactly what, you used the phrase reliable evidence that links it to the home. And the best I could tell, that means you went to the home at some point during drug dealing, which I don't see why that's reliable evidence. That seems to beg the question, at least according to some other cases in our circuit. So it seems to me a little easier just to say an officer could have relied on some cases suggesting that's a fair inference here, even though there's some other cases suggesting the opposite. Well, certainly, Your Honor. And the officers certainly could have relied on cases like Gunter for good faith here. Now the benefit of having a probable cause finding and supporting that is one, you know, this court is to provide substantial deference to the magistrate's determination. The magistrate is the one having to determine whether to let the officers go in in cases like this. And the more guidance this court can give on telling them yes, that was sufficient, the better decisions that they can make and the better deference this court can give in the future. So that would be our plug for a probable cause finding. But certainly Are you okay with guidance going the other direction? I would prefer not to have guidance going the other direction, Your Honor. You have to take the bitter with the sweet, I think. I'm sorry? You have to take the bitter with the sweet. That is true, but given the substantial deference afforded to the magistrate's determination here, when we have what the district court considered a close call, that should weigh in the magistrate's favor. And so here, even if it is only some evidence, it is some evidence, and it is reliable. The reliable issue, I think, comes in terms of informants, uncorroborated tips, things like that where there's been no corroboration or no finding and no basis in the affidavit for an informant's reliability. So here, we don't... The reason you're looking at that is that all you have is the informant says, I was in the house or I saw something in the house. Correct, Your Honor. Whereas here you obviously have the surveillance of him going in and out. Right. So we have the law enforcement seeing him go in and out, and we know that the timing was directly before going to meet with the C.I. and do the drug deal. We also have substantial evidence here of ongoing, continual drug trafficking. We have Mr. Govia, who was present at most of over a hundred meth deals in the course of a year with one single informant. We also have three within the last month that he was president, all of them, which were the controlled buys. At least one of those, Mr. Govia was armed. And then the last deal was within 48 hours and that was the one where they stopped at Mr. Govia's home directly before meeting with the C.I. So there's substantial evidence here that Mr. Govia was involved in this, that he was carrying a gun. And I would say that's an additional reason that probable cause should be found here because with drugs, we always have the problem that they dissipate. Right. They're either sold or they're used. So we want to talk about what's the quantity? Was there enough? Is it truly drug trafficking? Otherwise, the drugs that were there yesterday might not be there today. But here we have a gun as well. We have Mr. Govia carrying the gun. How are you using the gun? Are you using the gun because that shows there are drugs there? Are you using the gun because you could have had plain view of the drugs if you had probable cause there was a gun in the house when you look for the gun? Both, but primarily the second, Your Honor. I don't know that it's true that drugs are where guns are. Well, if you can look anywhere that something the size of a gun would be, then if the drugs are that size, then they could also be there. So that would be in plain view. The warrant for the gun is not going to restrict them to only look in certain areas. It's going to be the entire home. And unless we're talking about something smaller than a gun that they had to open and look in to find the drugs, which I don't think we have on this record, then they would have seen the drugs in plain view. I'd also like to point the Court to another case, which is United States v. Davidson. That is a published case. It is a little older, I think from 1991. I said it in our brief. And that's another one where this Court found probable cause, and there was no actual citing of drugs, no deals of drugs in the residence, but you do have several meetings. Actually, in that case, you don't have any citing of drugs at all. You have several meetings between known drug traffickers at public locations, and on two separate occasions, one of the drug traffickers stopped at Mr. Davidson's house before going to meet with the other drug traffickers and talk about drugs. The officers did hear them talking about drugs. So we have no actual deals in that case, but two times that they stopped by the house, and this Court said that that was sufficient for making this inference that drug dealers do keep evidence in their home. Counsel, this may be minor, but in all of the briefing and records and so on, people are talking about three controlled buys. The CI made three controlled buys. In the affidavit, there's one place where it says the informant working in the direction of control has made four controlled purchases. Is that a typo, or do you have any idea? Are they talking about a transaction with some other person? I believe that that is in the section where the affiant is talking about the reliability of the informant, so I believe that that is a separate deal that's not related to this case. Okay, thank you. So for those reasons, we asked this Court to find that the magistrate had a substantial basis for probable cause, but even if the Court prefers not to do that, not to reach that question, we do ask you to find that the officers relied in good faith. The standard for the nexus is certainly lower. This Court has said that evidence that would not be sufficient for a nexus for probable cause can still be sufficient for good faith, and as you pointed out, Judge Sutton, there are multiple cases kind of all over the board in the circuit on what is enough for probable cause in these circumstances, and certainly here, relying on the Gunter case and the Davidson case, the officers could reasonably rely that there was enough in this warrant for them to go into the house. I realize how ironic it is that I asked you to go to this argument, and now I'm asking you to go back, so I get it. I don't think it's rude, but it's odd. But I'm just curious to get your take. What do you think the best articulation of the probable cause rule is? Would you say it's something along the lines of listen, if you've got decent evidence that someone is involved in drug trafficking fairly contemporaneous with going to their house, that's enough? Is that what you would call the rule for probable cause purposes? I'm not quite sure what you mean by fairly contemporaneously. You insert the words. I'm trying to figure out if there is a rule that one can articulate. I'm just asking for your best sense of what the rule is. You started with reliable evidence. That seemed kind of question-begging to me, so I'm just trying to be as specific as possible. I think what you've been saying is something along the lines of the government has decent evidence corroborate in some way that someone's involved in drug trafficking, and the person goes to their house. That's enough, even if you have no evidence of what's inside the house. It has to be somewhat contemporaneous. I don't know how else to put it. Maybe within a couple hours, maybe within a day. What's the rule? I'm just curious what you think the rule is. I think it's hard to have a specific rule because there are so many different situations, but the rule that I would apply here... What's the best you can do? Not here, because you say you win. I don't understand that. I want to know what's the best you can do. If you could write it, because that's what you want us to do. You want us to give advice. How would you write it? I would write it the way the court has written it in the past. I understand that you don't think that's sufficient. Let me just explain for a moment why. I think the rule that there has to be... Reliable evidence? Is that going to be your rule? Reliable evidence? I say some reliable evidence, which would include a stop at the house directly before a drug deal, certainly. When you say some contemporaneous, I don't know if just going to the house the next day because he lives there is enough. But certainly, when they stop at the house, they go out of their way to stop at the house before going to the drug deal. That's enough. In the midst of a drug deal, you say it's the easy one, and you're not sure how to define it after that, is the way you would put it. I think it depends. It's so fact-dependent. If we have only isolated a couple drug deals here or there, then I think you need a different standard of connection to the house. If you have what we have here, which is constant, ongoing drug trafficking, I think that you can have a slightly less connection to the house, and still that inference reasonably applies. I think the timing definitely matters. I think all of those things can matter in coming up with a rule, which is why it's so fact-dependent and hard to come up with a very specific rule. But I think certainly in this case, we have... We've switched roles completely. I didn't want a rule, now I want the rule, and you're saying you can't give us a rule. I'm not complaining. I'm just saying it shows it's hard. Once one's asked to articulate it, it gets hard. Right. Well, I guess I should clarify. I'm not asking the court to say this is our one standard that we apply no matter what the facts are, because that standard is probable cause. That standard is a fair probability that evidence will be found in the location. And the reason that the Supreme Court has not been able to give us a much more specific definition than that is because it is so fact-dependent. But when dealing with ongoing, continuous drug trafficking, if there is a connection to the house, such as someone going to the house before the drug deal, that should be sufficient. And presumably there are other facts and circumstances. They could go to the house right after the drug deal with the sack that they got in the deal and come out without the sack. Yes. Of course, then on the other side, they also stopped at the grocery and bought a sack of potatoes. And they went into the house and came out with only one sack. We have the sack rule and the potato exception. Right. I think we're getting there. I think we're almost there. But then you go, if you say reliable evidence, that's what magistrates are for. That's what police officers are for. Exactly, Your Honor. Magistrates make the decision and this court should afford great deference to that decision. We have the additional issue here. The affidavit does not say that Mr. Govea sold drugs at these many transactions over the past year. He was there. I don't think the affidavit even says he observed or participated in the sale. So that's yet another. He's there with a gun and his waistband some of the time. But the affidavit doesn't state that he's a drug dealer. That's correct, Your Honor. The affidavit is unspecific on that. But when you put all of the evidence in the affidavit together, it is certainly a reasonable inference that he is well involved in this drug trafficking organization. He's present for most of 100 deals with this one CI. Generally, you don't bring your friend with you 100 times to do illegal drug trafficking. Again, we have to tie it again to whether a reasonable officer would believe that drugs would be found in the Mason Street house. Your view apparently is, I'm not saying I disagree, that because he's with Mr. Belcher, it's sort of guilt by association. He's somehow part and parcel of the drug dealing operation, I take it. Well, I would not call it guilt by association in this case, Your Honor, because we have so many times we have him being on parole. I see my time is up, but I may ask a question. We have him on parole carrying a gun that's observed by the CI during multiple occasions of the drug trafficking, including one of the three controlled buys within the last month. And we have him present that many times. It's just not a reasonable inference that he just happened to be there. Now, could the affidavit have been more specific about exactly where he was, whether he observed it, if he said anything? Yes, it could have, but also in these cases law enforcement's trying to be careful not to put in too many details to not potentially out their CI. Could they have done better? Certainly. But I think what they did do was sufficient here. Thank you. We ask you to confirm. Thank you. Thank you, Your Honors. I just want to touch on a couple of points that the government made there to wrap this up. I may well be driving back to Tennessee this afternoon trying to figure out exactly what reliable evidence is, because that seems to be the key issue here is what is reliable. And we will assert in this case that it is not reliable to assume that a man stops at his house before he heads to a drug transaction without any other corroborating evidence or anything else that shows there was drug transactions going on there and that be used as a basis to get a search warrant for his home. The fact of the matter is the government highlights this point about the ongoing criminal drug trafficking activity, etc., etc. That's not the issue really. The issue is what is the minimally sufficient nexus between Mr. Gouveia and his home. You can probably reach, without any problem, a minimally sufficient nexus that Mr. Gouveia was with Mr. Belcher who was conducting drug deals. We can get there. The key is what is the connection to the home. And the final point I would like to make is that a lot of times and I meant to bring this up earlier, a lot of times in their brief they mention that the prosecutor approved this warrant. Well, I don't know that that qualifies as a warrant. The magistrate did approve the warrant, but I believe if we check the record and I don't know this for sure, probably the same officer when we're talking about the Leon Goodfaith exception, probably the same officer that did the warrant is probably the same one who executed the search. So obviously he's going to rely on his own statements. So with that, your honors, thank you very much for your time and we would ask respectfully that Mr. Gouveia's conviction be reversed, the case be remanded and allow him and his trial counsel to pursue however they wish. Thank you very much. Thank you, counsel, both of you, for your arguments this morning. Mr. Brown, I see that you are appearing today and otherwise representing Mr. Gouveia under the Criminal Justice Act. For that, we thank you. We appreciate the work you've done for him and for the court. It's very helpful to have lawyers like you who are willing to take on clients under this arrangement. So we thank you very much and Ms. Long, again, we thank you for your appearance here today and arguments that were very well presented by both of you. The court's office calls me a lot about taking cases and I gladly do it every time they do. We appreciate that. Thank you. Thank you. The case will be submitted and you may call the next case.